## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JULIA SOLIZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-2785 |
| | § | |
| ASSOCIATES IN MEDICINE, P.A., | § | |
| and RICKY TAYLOR | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's Associates in Medicine, P.A. motion for summary judgment. Dkt. 18. Upon considering the parties' arguments, the valid summary judgment evidence, and the applicable law, the court is of the opinion that the defendant's motion for summary judgment be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Plaintiff Julia Soliz ("Soliz") was employed by defendant Associates In Medicine, P.A. ("AIM") from August 1997 until AIM terminated her employment on January 17, 2006. Dkt. 18. At the time AIM terminated Soliz's employment, she worked in AIM's business office as a collections representative. *Id*. She was supervised by defendant Ricky Taylor ("Taylor"), AIM's office manager Anthony Robinson ("Robinson"), and AIM's practice administrator Julie McNutt ("McNutt"). Soliz alleges that she was continually subjected to harassment by Taylor. She alleges that he yelled at her and insulted her in front of other employees, such as by calling her illiterate, and that he blamed her for, and made her work on, assignments that were not her responsibility. Dkt.

22, Ex. A.  On January 10, 2006, Soliz alleges that Taylor told her that despite her qualifications and experience, she would have difficulty finding other work if she left AIM because she was too old. *Id.*  On January 16, 2006, Taylor asked Soliz to stay late to balance AIM's closing sheets for the day that were supposed to have been balanced by another employee, who had already left for the day. Dkt. 22, Ex. A.  Soliz asked Taylor to stay and help her finish the closing sheets, but he refused, and Soliz proceeded to contact Robinson about this matter.  *Id.*  Taylor heard this conversation, came back, and took the telephone from Soliz.  *Id.*  Taylor then began to tell Robinson about the events of the night.  *Id.*  During this conversation Soliz asked Taylor to give the phone back so that she could talk to Robinson, but he refused.  *Id.*  Soliz then reached for the telephone, but her hand only made contact with the cord, so she let go.  *Id.*  Taylor then threatened her by saying, "Girl, don't make me hit you!"  *Id.*  Soliz responded, "If you think you can hit me, go ahead."  *Id.*  Taylor then threw the telephone at her and left the room.  *Id.*  The next day Soliz reported the incident to Robinson, who asked her whether she was certain that she wanted to pursue a complaint against Taylor.  *Id.*  Soliz stated that she was sure.  *Id.*  Later that day, Robinson told her that he had spoken with McNutt and that they had decided to terminate both her and Taylor due to "legalities".  *Id.*  On January 18 or 19, 2006, Soliz filed a report with the Houston Police Department about Taylor's conduct on the night of January 16.  *Id.*  On March 3, 2006, Soliz filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on age, retaliation, and hostile work environment. Dkt. 19, Ex. C.  On June 14, 2006,  the EEOC notified Soliz that it was unable to substantiate her charge and also informed her of her right to file a lawsuit.  *Id.*

Soliz filed this lawsuit against AIM and Taylor on August 30, 2006 for age discrimination, wrongful termination, negligent training, supervision, and retention, assault, intentional infliction

of emotional distress, and uncompensated overtime pay.  Dkt. 1.

ANALYSIS

Defendant AIM requests that the court grant summary judgment on plaintiff's claims of age discrimination, wrongful termination, negligent training, supervision, and retention, intentional infliction of emotional distress, and uncompensated overtime pay.

**A.    Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 347 (2001).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all the evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then they are not entitled to summary judgment and no

3

defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp.*, 477 U.S. 317 at 323-25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163-64 (5th Cir. 2006).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Jones v. Robinson Property Group*, *L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).  However, the non-movant cannot avoid summary judgment simply by presenting conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments.  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869,

4

872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B.     Age Discrimination**

In interpreting federal employment discrimination law, the U.S. Supreme Court has established a burden-shifting scheme to evaluate the claims at issue.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817 (1973) (creating the framework and applying it to a Title VII claim); *see also O'Connor v. Cons. Coin Caterers*, 517 U.S. 308, 310, 116 S. Ct. 1307 (1996) (applying the *McDonnell Douglas* framework to age discrimination claims under the federal Age Discrimination in Employment Act of 1967 ("ADEA")).  To prevail on an ADEA claim, Soliz must first establish a *prima facie* case that establishes evidence of discriminatory treatment.  *Baker v. Amer. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005).  A *prima facie* case can be established by showing that (1) Soliz was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of her age. *Id.* (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).  If a plaintiff makes this showing, then the burden shifts to the defendant who must then assert "a legitimate nondiscriminatory reason for its employment action."  *Machinchick*, 398 F.2d at 350.  A plaintiff need only make a low showing to shift the burden.  *Id.* at 754.  If a defendant articulates a nondiscriminatory reason, then the burden shifts once again and the plaintiff must meet its ultimate burden of persuasion on the issue of discrimination.  *Id.*  This can be achieved by showing that the reason for the employment action was merely a pretext for discrimination.  *Id.*  At all times the burden of persuasion falls on the plaintiff.  *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002).

Neither party disputes that Soliz has demonstrated the first three elements of her *prima facie* case.  The parties' dispute centers around the fourth requirement.  Thus in order to survive summary judgment, Soliz must demonstrate either that she was i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of her age.

Nowhere in Soliz's complaint or response to summary judgment does she argue that she was in fact replaced by someone outside of the protected class or that she was replaced by someone younger.  Dkt. 5, 22.  AIM contends that Soliz was never replaced: it simply moved other employees around to cover her responsibilities.  Dkt. 19, Ex. B.  Soliz has made no argument to the contrary and has not brought forth any evidence to the contrary.  Instead, she is contending that AIM terminated her employment because of her age.  Therefore, Soliz has the burden of demonstrating that she was otherwise discharged because of her age.

In Soliz's response to AIM's summary judgment motion, she argues that she was continually subjected to harassment by Taylor.  She alleges that he yelled at and insulted her in front of other employees, such as by calling her illiterate, and that he blamed her for, and made her work  on, assignments that were not her responsibility.  Dkt. 22, Ex. A.  On January 16, 2006, Taylor told her that, despite her qualifications and experience, she would have difficulty finding other work if she left AIM because she was too old.  *Id.*  Soliz contends that Taylor's conduct made her work environment so difficult that she contemplated resigning altogether, but she ultimately decided to stay due to the financial hardship she would have to endure.  *Id.*  Though Soliz has not provided any other evidence of this discrimination, a plaintiff need only make a low showing to shift the burden, and it is arguably possible to construe Taylor's statement about and Taylor's treatment of Soliz as discriminatory.  *Baker*, 430 F.3d at 754.    Therefore, the court assumes that plaintiff has

6

demonstrated that she was otherwise discharged because of her age and that the burden has shifted to AIM.

In response, AIM argues that Soliz's employment was terminated for violence in the workplace because of the January 16, 2006 incident with Taylor.  Dkt. 18.  This qualifies as a legitimate nondiscriminatory employment action and shifts the burden back to Soliz.

Soliz may meet this burden by demonstrating that the proffered reason for the employment action was pretextual.  Nowhere in Soliz's response to summary judgment does she offer any competent evidence that the reason given by AIM is a pretext.  In fact, the evidence shows that Taylor was also fired for the same incident, lending validity to the reason proffered by AIM.  Additionally, Taylor's remark about Soliz being too old to get another job should be considered a stray remark.  *See Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993).  Stray remarks alone will not overcome overwhelming evidence corroborating a defendant's non-discriminatory rationale.  *See, e.g., Brown v. CSC Logic, Inc.*, 82 F.3d 651(5th Cir. 1996).  A stray remark may be sufficient evidence of discrimination if the comments are (1) related to an employee's age; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.  *Krystek v. Univ.of Southern Miss.*, 164 F.3d 251, 256 (5th Cir. 1999).  Taylor was not an individual with authority over the employment decision issue.  McNutt and Robinson were the individuals with the authority to terminate employment and there is no evidence that they ever made any remark regarding Soliz's age.  *See Brown*, 82 F.3d at 656 (upholding summary judgment in favor of defendant in age discrimination case where defendant's cost cutting rational for the termination was not outweighed by age related comments, such as "old goat" and "you just can't remember, you're getting too old,"

7

made close in time to termination of plaintiff and by the individual who actually terminated plaintiff). Comments made by an employee with no authority in the employment decision making process are not probative of discrimination. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 436 (5th Cir. 1995). Therefore, Soliz has failed to raise a genuine issue of material fact. Because the plaintiff has not met this burden, defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 322-23. Thus, Soliz's age discrimination claim cannot proceed and summary judgment is GRANTED.

## C.      Hostile Work Environment

In Soliz's response to AIM's summary judgment motion, Soliz asserts that her claim for discrimination is also based on a hostile work environment, and not simply age discrimination. Dkt. 22. Though it does not appear that Soliz has pleaded a hostile work environment in her first amended complaint, in the interest of general pleading rules, the court will address the argument. Dkt. 5.

The Fifth Circuit has not specifically addressed whether a hostile work environment claim is available under the ADEA. A hostile environment claim was initially applied in the context of sexual harassment claims under Title VII of the Civil Rights Act of 1964. *See Lacher v. West*, 147 F. Supp. 2d 538, 542 (N.D. Tex. 2001). The Fifth Circuit has, however, recognized hostile environment claims for other Title VII categories, for example, race. *Id.* Nonetheless, other circuits have recognized that a hostile work environment claim is available under the ADEA. *See, e.g., Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2nd Cir. 1999); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). The court will assume that if faced directly with the claim, the Fifth Circuit would follow the reasoning of the other circuits and conclude that hostile work

environment claims are available under the ADEA.  *See Lacher*, 146 F. Supp. 2d at 543.

In order to establish a *prima facie* case of a hostile work environment, Soliz must show that (1) she belongs to a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on age; (4) the harassment affected a term, privilege or condition of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  *See Long v. Eastfield Coll.*, 88 F.3d 300, 209 (5th Cir. 1996) (setting forth the elements of a hostile work environment claim in the context of a Title VII gender discrimination case).

To determine whether an environment is sufficiently hostile to be actionable, a court reviews all of the relevant circumstances, including the frequency of the conduct, the severity of the conduct, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.  *See Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998).  Incidental or occasional age-based comments, discourtesy, rudeness, or isolated incidents are not considered discriminatory changes in the terms and conditions of a worker's employment.  *See Id.* at 269 n. 3 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998)).  Central to a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged her from remaining on the job, or kept her from advancing in her career.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993).  The purpose of a hostile environment claim is only to prohibit and prevent conduct "that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace."  *Shepard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).  Equity is not served if a claim can be maintained solely based on conduct that wounds or

offends, but does not affect the employee's performance.  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

The only evidence that Soliz brings forth to establish a hostile work environment is her affidavit.  In it she states that Taylor engaged in abusive and inappropriate behavior toward her. Specifically, he would yell at her in front of other employees, insult her by calling her names such as illiterate, and blame her for things that were not her responsibility.  She states that in late December of 2005 or early January of 2006, she considered quitting. However, she ultimately decided not to because she could not afford to quit.  The only specific conduct by Taylor that could possibly be construed as age discriminatory remarks is the statement he made to Soliz on January 10, 2006.  On that date Taylor told her that "[s]omeone like you, at your age of fifty, even though you have experience, you will have a hard time finding a job."  Dkt. 22, Ex. A.  Finally, Soliz complains that on January 16, 2006, Taylor threw the phone at her after an argument.

Even though Soliz says that she considered quitting her job as a result of Taylor's conduct, the evidence does not support a finding that the conduct was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.  The evidence that Soliz has brought forth can be considered only incidental age-based comments, discourtesy, rudeness or an isolated incident and not sufficient to support a finding of a hostile work environment.  *See Lacher*, 147 F. Supp. 2d at 544.  Taylor's allegedly harassing conduct can only be considered conduct that wounds or offends and not conduct that hindered Soliz's work performance.  *See Weller*, 84 F.3d at 194.  Thus, even assuming arguendo that Soliz has pleaded a hostile work environment claim, she has not met her burden and summary judgment is GRANTED.

**D.     Wrongful Termination**

10

Soliz also brings a claim for wrongful termination based on retaliation because when she notified AIM that she wanted to pursue a grievance against Taylor after the incident on January 16, 2006, AIM terminated her employment.  Similar to age discrimination claims, retaliation claims are developed through a burden-shifting construct.  *See Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005).  To establish a *prima facie* case for retaliation, an employee must show (1) that she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action.  *Id.*  "If the employee sets out a *prima facie* case, the burden shifts to the employer to state a legitimate non-retaliatory reason for its action."  *Baker*, 430 F.3d at 754-55.  "After the employer states the reason, any presumption of retaliation drops from the case and the burden shifts back to the employee to show that the stated reason is actually a pretext to retaliation."  *Id.* at 755.

An employee has engaged in a protected activity if she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.  42 U.S.C. § 2000e-3. Soliz did not specifically allege that she participated in any EEOC activity that qualifies as a protected activity.  In her response to summary judgment, the sole argument is that after she stated to Robinson that she *wanted to file* a formal complaint against Taylor she was fired, and that had she not wanted to file a formal complaint she would not have been fired.  However, under the plain language of the statute, an employee has to have already filed a charge.  Soliz did not file an EEOC charge until March 3, 2006.  Dkt. 19, Ex. C.  Nonetheless, because of the subjective nature of this inquiry, Soliz may have believed that she was engaging in a protected activity.  Because the evidence should be viewed in the light most favorable to the non-movant, the court will assume that when Soliz stated she wanted to file a grievance she had engaged in a protected activity.

11

There is no dispute that an adverse employment action occurred, therefore Soliz must demonstrate that a causal link existed between the protected activity and the adverse action. Soliz's argument is that if she had not stated her desire to file a formal complaint against Taylor, then she would not have been fired. Thus, a casual link existed between her wanting to file a complaint and being fired. However, AIM terminated both Soliz and Taylor for violence in the workplace. Therefore, it seems unlikely that there was a casual connection between the protected activity (if there indeed was any) and the adverse action.

Even if Soliz's allegations were enough to make out a *prima facie* case, her retaliation claim would still fail for the same reason her age discrimination fails. AIM has asserted a legitimate non-retaliatory reason for its employment action-violence in the workplace and Soliz has not produced any evidence that this reason was pretextual. Thus, her retaliation claim fails and summary judgment is GRANTED.

**E.     Negligent Training, Supervision, and Retention**

Soliz also claims that once she notified AIM of Taylor's conduct towards her, AIM had a duty to train and supervise Taylor in order to correct his conduct towards her. And if they could not correct his behavior, then AIM should have not continued to employ him. Texas law allows recovery for negligent hiring and supervision in cases where the employer's direct negligence in hiring or retaining an incompetent employee created an unreasonable risk of harm. *Garcia v. Hospice of El Paso*, No. EP–02–CA–268–DB, 2003 WL 21961177 at *5 (W.D. Tex. May 20, 2003). However, liability will only be found if the employer knew, or by the exercise of reasonable care should have known, that the employee was incompetent or unfit. *Id.* Texas has recognized an employer's duty to make an inquiry into the competence and qualifications of those considered for

employment, and an employer may be liable for negligently hiring an incompetent employee and thus

be held liable for damages. *Arrington v. Fields*, 578 S.W.2d 173, 179 (Tex. Civ. App.—Tyler 1979,

writ ref'd n.r.e.). This duty includes hiring, supervising, retention, and termination. *Garcia v. Allen*,

28 S.W.3d 587, 592 (Tex. App.—Corpus Christi, 2000, pet. denied).

     *1.    Negligent Retention*

     Negligent retention can be shown by proving that the employer was aware or should have

been aware of an employee's incompetence and yet continued to retain the employee, creating an

unreasonable risk of harm. *Jackson v. Cheddar's, Inc.*, No. Civ. A.6:02-CV-101-C, 2003 WL

23315465, at * 11 (N.D. Tex. Nov. 19, 2003). To recover for negligent retention the plaintiff's

injuries must be the result of the employer's continued employment of an unfit employee. *Id.* In

Robinson's affidavit, he states that "Soliz never mentioned anything about inappropriate comments

or behavior until the evening of January 16, 2006 . . . [u]ntil January 16, 2006, I was not aware of

any employment dispute or age-related discriminatory conduct between Soliz and Taylor." Dkt. 19,

Ex. D. In Soliz's affidavit, she states that "[o]n several occasions, beginning in September or

October of 2005, I notified AIM's office manager, Anthony Robinson, about Taylor's inappropriate

and abusive conduct . . . I notified Robinson about the incident in which Taylor called me illiterate

in front of other AIM employees." Dkt. 22, Ex. A. Soliz also stated that, in late December or early

January of 2006, she notified McNutt that she wanted to quit because of Taylor's abusive conduct.

*Id.* On January 10, 2006 Soliz alleges that Taylor told her, "[s]omeone like you, at your age of fifty,

even though you have experience, you will have a hard time finding a job." *Id.* She stated that on

January 11, 2006, she notified Robinson about Taylor's comment. *Id.*

     Viewing the evidence in the light most favorable to the plaintiff, the court should assume that

Soliz did make AIM aware of Taylor's conduct towards her.  However, even assuming this, her claim for negligent retention fails because there is no evidence that Taylor's conduct created an unreasonable risk of harm to her or others.  In order to recover, Soliz must prove that her injury was a result of AIM's continued employment of Taylor.  Even if AIM was aware of Taylor's conduct, his allegedly harassing conduct would not be such that AIM's continued employment of him created an unreasonable risk of harm.  Soliz has not brought forth any competent evidence as to what statements and specific acts of Taylor created an unreasonable risk of harm.  Therefore, Soliz cannot prove that her injury was a result of Taylor's continued employment and, summary judgment is GRANTED.

2.    *Negligent Training and Supervision*

Along those same lines, Soliz alleges that the failure of AIM to properly train and supervise Taylor resulted in the continuation and escalation of Taylor's negative and harassing conduct, which resulted in Taylor's assault on her.  Dkt. 5.  A plaintiff can recover for negligent training or supervision if she can prove that the employer did not adequately train or supervise its employees and that the negligence proximately caused the injuries to the plaintiff. *Jackson*, 2003 WL 23315465 at *12.  The foreseeability component of proximate cause requires that a person of ordinary intelligence should have anticipated the injury.  *Id.*  The elements of proximate cause "cannot be established by mere conjecture, guess, or speculation." *Id.*  Plaintiff has presented no summary judgment evidence establishing that AIM failed to train or supervise its employees.  Further, a reasonable person would not have anticipated Soliz's injury based on Taylor's allegedly harassing conduct.  Unsupported allegations and conclusions are not competent summary judgment evidence. *Id.*  Therefore, summary judgment is GRANTED on Soliz's negligent training, supervision, and

14

retention claims.

**F.      Intentional Infliction of Emotional Distress**

Soliz alleges that Taylor intentionally acted in an extreme and outrageous manner, and because of his conduct, she was subjected to a hostile work environment and was afraid for her safety, which caused her extreme emotional distress. Dkt. 5. Soliz also alleges that by subjecting her to an abusive work environment and firing her when she complained about the work environment, AIM intentionally or recklessly engaged in extreme and outrageous conduct which caused her significant emotional distress and AIM is vicariously liable for Taylor's intentional infliction of emotional distress. Dkt. 5.

In order to recover for intentional infliction of emotional distress, Soliz will have to prove (1) that AIM and Taylor acted intentionally or recklessly; (2) that AIM's and Taylor's conduct was extreme and outrageous; (3) that AIM's and Taylor's actions caused Soliz emotional distress; and (4) that Soliz's resulting emotional distress was severe. *Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1988); *Jackson*, 2003 WL 23315465 at *13. "Insults, indignities, threats, annoyances, or petty oppressions, without more, do not rise to the level of intentional infliction of emotional distress." *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000). For AIM's and Taylor's conduct to be sufficiently extreme and outrageous, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Insensitive or even rude behavior does not constitute extreme and outrageous conduct. *Id.*

15

Soliz has not shown that any of AIM's or Taylor's conduct was outrageous in character, extreme in degree, or in any other manner atrocious, and utterly intolerable in a civilized community. Further, Soliz has offered no evidence to substantiate that she actually suffered emotional distress or that such distress was severe. Accordingly, the court finds that plaintiff's allegations do not support a claim of intentional infliction of emotional distress and summary judgment is GRANTED.

## G.    Overtime Pay

Last, AIM asserts that it is entitled to summary judgment on Soliz's claim for overtime compensation because she was employed in an administrative capacity, and thus, is exempt from the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 213(a)(1). Soliz argues that she does not qualify for the exemption status under § 213(a)(1) of the FLSA because she was not employed in an administrative capacity and did not exercise independent discretion and judgment. Dkt. 5.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207 (a)(1). However, an employer is not required to pay overtime compensation to an employee employed in a bona fide administrative capacity. 29 U.S.C. § 213(a)(1). Both parties agree that the short test is applicable to determine whether Soliz is an exempt employee.

Under the short test, an administrative employee may be exempt if (1) the employee has a salary of more than $250 per week; (2) the employee's primary duty is performing office work or nonmanual work directly related to management policies or general business operations; and (3) the

16

employee exercises discretion and independent judgment."  29 C.F.R. § 541.214; *Heidtman v. County of El Paso*, 170 F.3d 1038, 1041 (5th Cir. 1999).  An employer claiming an exemption bears the burden of proving the employee's exempt status, and exemptions are to be narrowly construed against the employer.  *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004).  A job title alone is insufficient to establish the exempt status of an employee.  29 C.F.R. § 541.200.

It is undisputed that Soliz was a salaried employee who earned more than $250 per week. Dkt. 19, Ex. A.  Thus, the parties' dispute centers around whether Soliz performed primarily office work or nonmanual work directly related to management policies or general business operations, and whether she exercised discretion and independent judgment.  Soliz was employed at AIM as the collections representative.  Dkt. 22, Ex. A.  The only evidence available as to Soliz's job duties is contained in the affidavits of Julie McNutt and Soliz.  McNutt states in her affidavit that Soliz "monitored and performed independent research of a patient's file to determine what claims were not paid, and was free to make her own determination as to whether insurance claims should be re-filed or appealed to the insurance companies."  Dkt. 19, Ex. A.  She also states that "Soliz received little guidance, direction or instruction in performing these tasks, and Soliz exercised her own judgment as to how to communicate with the insurance companies regarding the processing of patients' claims, and exercised her judgment as to how to communicate with AIM's patients regarding the handling of their accounts, collections, and payment arrangements."  Dkt. 19, Ex. A. McNutt also states that Soliz sometimes had to prepare AIM's daily report of monies and she had to independently identify and resolve errors in those reports.  Dkt. 19, Ex. A.

In Soliz's affidavit, she states that as a collections representative she had to follow strict guidelines when securing payments and that she was given certain procedures she had to follow.

17

Dkt. 22, Ex. A.  She states that her task was to relay the information she was given to the insurance companies and she had no discretion in what information she could or should give.  Dkt. 22, Ex. A.  Throughout her affidavit, Soliz states that she was required to do certain tasks.  She states that "[a]t no point was I allowed to make decisions on which accounts to attempt to collect on and which to write off.  I was not given discretion in the manner in which I communicated with patients or insurance companies, but had to follow specific guidelines . . ."  Dkt. 22, Ex. A.  Soliz also states that she was required to create and balance the daily closing sheets and that she had to follow the guidelines provided by AIM when doing this task.  *Id.*

The term "discretion and independent judgment" ". . . implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance."  29 C.F.R. § 541.207(a).  One situation in which the term has been frequently misapplied involves the level or importance of the matters with respect to which the employee may make decisions.  *Id.* § 541.207(d).  "In one sense almost every employee is required to use some discretion and independent judgment."  *Id.*  Bookkeeping tasks and routine clerical and similar types of work have been held not to be exempt administrative work.  *See id.*; *see also Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282, 287 (4th Cir. 1986) (employee's handling of billing and accounts payable were ordinary bookkeeping functions and not exempt administrative work).  Furthermore, other courts have found that employees who handle routine telephone collections are performing non-exempt, non-administrative work.  *See Brennan v. Westinghouse Credit Corp.*, 509 F.2d 81 (6th Cir. 1975) (contacting creditors is a non-administrative duty); *Haber v. Americana Corp.*, 378 F.2d 854, 856 (9th Cir. 1967) (telephone collections is non-administrative work).

Based on Soliz's affidavit, it appears that Soliz's employment consisted primarily of telephone collections for accounts receivable and accounts payable.  Any discretion or independent judgment she exercised was only the kind that in some sense every employee exercises.  The court finds that a genuine issue of material fact exists as to whether and to what degree Soliz exercised discretion and independent judgment.  Moreover, taking into account the fact that exemptions are to be narrowly construed and that the burden of proving an employee's exemption is on AIM, the court finds that AIM has not met its burden on this issue.  Thus, summary judgment is DENIED on this claim.

### Conclusion

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Defendant's motion is GRANTED with respect to the age discrimination, hostile work environment, wrongful termination, negligent training, supervision, and retention, and intentional infliction of emotional distress claims.  Defendant's motion is DENIED with respect to the overtime pay claim.

It is so ORDERED.

Signed at Houston, Texas on August 17, 2007.

Gray H. Miller
United States District Judge

19